Good morning, Your Honors. My name is Stephen Cowley from Edwards, Angel, Palmer & Dodge. I represent the plaintiffs in this matter, Boston. You want to keep your voice up. I represent the plaintiffs in this matter, Boston Telecommunications Group and Rod Marshall. When this case started, it was a very broad case against a number of defendants. As this case is now presented to the court, it's a very specific case against one defendant. We admit it's a case that involves specifically an allegation of a fraudulent scheme to get the plaintiffs to invest in a Bulgarian telecommunications transaction that was, in fact, we allege, actually dead on arrival as a transaction before the plaintiffs were sucked in to put in over $500,000 of their money to invest in it. When the case started, this appeal is from the district court's dismissal of the case on forum non-convenience grounds. Yes, Your Honor. That's what I think you're going to talk about, aren't you? I am, Your Honor. And I think the only reason I think it's important to recognize that the case narrowed substantially over time is it's very material when analyzing the district court judge's analysis of the private interest factors of where the witnesses are located and where it's convenient to recognize, as we say, he completely failed to address the standard in the way that the Ninth Circuit has said in the LAUC, I pronounce it LAUC, L-O-U-E-C-K, it's cited in our briefs, decision that he was supposed to weigh the case against the plaintiffs. He was supposed to weigh the importance of the testimony, not just count up the witnesses identified and count up the evidence, the documentary or physical evidence, as he did, clearly, only that, but instead was supposed to analyze the importance of the witnesses' testimony, the importance of the physical evidence, and then assess where the balance fell in terms of which forum was more appropriate. He did not do that, and it's very important, because he held against Mr. Marshall, excuse me, against the plaintiffs. Initial disclosures filed years earlier when the case was far broader and included claims against Deloitte, Touche, Tomatsu, and a number of its subsidiaries for negligence in managing the outfit, the group that committed the fraud. There were numerous witnesses that were identified in Europe by the plaintiffs that would go to the management, the control of the Deloitte entities that have nothing to do with this case any further. He simply cited the initial disclosures against the plaintiffs and said, see, all these witnesses that the plaintiffs identify that are based in Europe. That was completely inappropriate. If he went through the process that Lauff said he was supposed to go through, this Court would be able to see that those witnesses have no bearing, have nothing to say on the issue now that's presented for trial, which is simply a fraud claim against the defendant Wood, who is alleged to have conspired with an organization called Global Cable Systems, which as far as we know is just a shell and name organization in Toronto, excuse me, in Canada, Vancouver. But the head, the principal, George Manis, is a San Francisco resident. The plaintiffs allege that the fraudulent scheme, which admittedly is international, admittedly involves in the amended complaint, we talk about representations made in some in Slovakia, Bulgaria, Yugoslavia, many in Israel, Vancouver, and San Francisco. The allegations in the complaint are that on two occasions, who we allege to be co-conspirators, Mr. Wood and George Manis in San Francisco, brought the plaintiffs to San Francisco for a couple of days of meetings, at which time in the first meeting they got them to invest $250,000, the second meeting they got them to invest another $300,000, before going forward and saying that they were partners in something that was dead before it even happened. We've read your briefs, and I think you make a good argument that in these cases, at least the ones I've been involved with, both as a lawyer and a judge, you've got two people that are going to say exactly the opposite, the plaintiff and the defendant, and it's going to turn on ordinarily record evidence or witnesses outside of them. So what your argument is, as I understand it, is this is where the key witnesses can testify, and therefore this was the most important forum. But on the other hand, those who oppose you say, but this has been said again and again, there was nothing new that was in San Francisco. Now why isn't that a valid rejoinder? There is no standard. There is nothing they point to to suggest that there's supposed to be something unique about this forum. To the contrary, the standard, as enunciated in the Dole decision of the Ninth Circuit, says that the sparing, the exceedingly rare use of forum nonconvenience to dismiss a case is not to be used against a plaintiff to pick, to force them to choose the ideal location. This is admittedly an international transaction. If that were the standard, respectfully, Your Honor, then there's no place in the world that would take it, because Yugoslavia, Slovakia, Bulgaria, Israel, Vancouver would all say the same thing, that what was represented here was just a piece of a broader scheme. It was nothing new or unique. And in fact, the Ninth Circuit in the Ravello-Minegro case, another case cited in our brief, applied a very different standard. In that situation, you had Dominican baseball players who were signed up by an agent to play for a minor league club to be looked at by the San Francisco Giants. They sued in California after only playing, and the torts occurred in the Dominican Republic is where the torts occurred. They sued in California the San Francisco Giants and said your agent committed harassment, sexual discrimination, and other torts. The court said there that there was sufficient context to sue in California to weigh as a factor the import of the decision by the plaintiffs to choose California, and there was a local interest in the dispute because the Giants had a contractual relationship with the agent and had contractual relationships and prospective scouting relationships with the plaintiffs. Well, that clearly is not unique to California. That clearly relates easily to the Dominican Republic, because that's where the agent was located and doing the scouting. That's where the plaintiffs played. The Ninth Circuit, this Court, excuse me, never said that in order to have a local interest sufficient to hold the case in California, the plaintiffs were required to find some unique aspect of the tort that occurred here, just context, and clearly we allege fraud occurred here. And taken as true for the purposes of this motion are the allegations in the amended complaint that the plaintiff, despite hearing similar representations in Israel, in Vancouver, and elsewhere, never agreed to invest until after being held here for a couple of days, having meetings held here for a couple of days, deciding it was worth investing. He was willing to make the initial investment of $250. He was called back here to say, well, in fact, that wasn't good enough. My board requires more, so he put in another $300. The plaintiff alleges, but for these representations, but for what he was shown, including representations by Mr. Wood, including documents by Mr. Wood alleging a $40 million appraisal, evaluation of one of the telecom assets, representations that the investment would be guaranteed by Deloitte and backed up, so it was sort of a no-risk investment by the plaintiffs. Based on those representations, in San Francisco, he alleges he invested. Now, if the defendants, as they want to argue, say, well, it really isn't true. We really didn't make them. They're not unique. They're just saying they're going to win the case. That can't possibly be the basis for throwing the case out on a foreign nonconvenience ground. The defendant wants to say on affidavits, we're going to win. Would you address the document issue? That was the question of access to documents was important to the district court. And, again, I believe the district court completely ignored the standard from the Lawick decision of weighing the alleged importance of the documents. Here we have the plaintiff's documents are in the United States. The co-conspirator's documents, the Global Cable Manus, are presumed to be, alleged to be in San Francisco, where Manus lives. Defendants never suggest that that's not true. What they say instead is, well, Deloitte documents are spread out throughout Europe. But they don't identify the importance of these so-called Deloitte documents. Why would Deloitte, the accounting firm, have any documents that differ from the client firm they don't even address? Even what they are, they don't address in terms of the importance. And they simply say, since Mr. Wood no longer works for Deloitte, he can't control their production here. Well, that's just an issue for discovery under the Hay Convention. And it is equally true, Your Honors, in Slovakia, because the Deloitte entities that supervised Wood that he was working with and for aren't just Deloitte in Slovakia. He was working in Yugoslavia. He was working he was manager of a Central European office. And Deloitte Tamatsu has numerous important documents. They got out of this case on personal jurisdiction grounds saying, we're a Swiss Bahrain with a New York office and we don't do business anywhere else. You can only come to Switzerland or New York to get us. Now, suppose you're arguing this for the district court and we say everything you did makes good sense. But then we could grant it. But here we're reviewing the district court and our standard review, as I understand it, is abuse of discretion. It is, Your Honor. Suppose in first instance I would have found it differently. How can I say the district court abused its discretion?  There's a couple of points. First and foremost, we say the district court in its discretion materially failed to hold the defendants to their burden. The defendant had the burden of showing by clear evidence a strong argument for why it was far more convenient for the parties and the interests of justice, the systems, to pursue the case in Slovakia. We say he did not do that. At the end of the day, he found a couple of factors favored dismissal. All the other factors neutral. Never amounted to a strong showing. We believe he committed error on the couple of factors he said favored dismissal. One was the location of the witnesses in the documents. I've spoken about that. He completely failed to honor the standard in Lawick of analyzing the importance of those documents, the saying where the balance comes out. And in addressing the witnesses, he doesn't even mention Mainis, the co-conspirator. There were four attendees at the meetings in San Francisco where fraud was alleged. All four of them can be heard personally live here in terms of testimony. Mainis, the plaintiff, Wood, and an Israeli citizen who has agreed and submitted a declaration to the court saying he will appear in San Francisco for trial, but he will not go to Slovakia. There are no other live witnesses anywhere in the world who could come and testify about those meetings and what was said. Those are the most important evidence to weigh credibility on. He didn't even address the district court judge. The presence or lack of presence of Mainis in Slovakia and the presence here. So he abused his discretion by not applying the standard he was required to apply in assessing it, according to Lawick. And in terms of the public factors, again, he found two of them to be neutral. Two favored dismissal, he said, because there was no contact with San Francisco. That is wrong. It's a matter of law. There is no case that suggests contacts with San Francisco had to be unique and different in terms of giving rise to a claim than contacts anywhere else in the world in order for there to be local contacts. It is actually contrary to Ninth Circuit opinion. And lastly, Your Honors, he determined as a matter of law the plaintiff was not entitled to any ñ was entitled to diminish deference for his choice of forum because he was foreign. We believe that's a misreading of the Supreme Court and Ninth Circuit decisions. The Eighth Circuit decision that we cited addressed this point blank, said, no, the forum for home forum for a U.S. citizen is anywhere in the U.S., not the resident forum. We believe the Ninth Circuit decisions talk about being a resident or citizen. The or citizen doesn't mean anything if you have to be a citizen of the same forum because that's where you're a resident. We believe he misinterpreted it. So those are the standards that we believe were missed and why he abused his discretion. Thank you, counsel. Why don't you save your time for a moment. Good morning, Your Honors. Susan Jameson of Cobblentz, Patch, Duffy and Bass. I'm going to have to give you the same admonition I've been giving everybody. Move that microphone right up because it does pick you up. There you go. I would first like to address counsel's position that the district court committed legal error by applying a diminished standard of deference to the plaintiff's choice of forum. The plaintiffs in this action were not residents of California. So the question presented to Judge White at the outset of this forum non-proceeding was whether they had chosen their home forum and whether that choice of forum should be granted a very strong degree of deference. This court ruled in the Gemini Capital case that an out-of-state resident who chooses a different state's forum is not choosing his home forum. Counsel has pointed out that other circuits have expressed different views on this issue, but for purposes of this case, Judge White did not have the discretion to depart from Ninth Circuit precedent that was directly on point. So the first assignment of legal error is incorrect as a matter of stare decisis and the rule of the circuit. The second point we would like to emphasize is the degree of deference owed to the district court's decision-making in this case. The abuse of discretion standard is not a re-weighing of the evidence for each factor, but rather is an examination of whether the district court performed his job in appropriately considering the governing legal standards and appropriately considering the evidence presented by the parties. This decision came after a two-hour-plus hearing in which the district court extensively questioned counsel about the difference, the different presentations of evidence on issues such as the location of material documents and their importance to the case, the location of material witnesses and their importance to the case, the burden on the local court system and its connection to the dispute, and the importance of the jurisdiction and the other factors that are relevant to the private and public interest factors. Is how busy the judge a factor that should be weighed? The burden on the local court system is a factor that is stated in numerous decisions. But the developed jurisprudence in this area is to conduct a comparative weighing to see whether if the action is sent to another jurisdiction, there will be such a delay that the burden is comparatively greater on the plaintiff who would be transferred to that system. That's what I assumed. I assumed we were in the business of hearing complaints. And what was the evidence about the court, the foreign court, about their use of case management, bringing cases together, effectiveness, corruption, et cetera? What was the evidence that was before the court on that issue? The only evidence presented to the court was in the form of an expert declaration submitted by the defendants in the context of the original forum nonconvenience motion. The defendants, the Deloitte defendants and Mr. Wood, my client, collectively presented the expert declaration of a These claims could be heard. They recognize claims for commercial fraud and that such claims are generally brought to trial within one year of being filed in the court. And did he say how long they took to try? Did he go into the way they have, how they don't have continuous trials? There wasn't anything of that? His testimony, Your Honor, was that the case would ordinarily be resolved within one year of its filing in the Slovak court. There was no contradictory evidence presented by the plaintiffs on the issue of the speed or nature of the Slovak court system. There was also discussion before Judge White of the fact that it was a civil law system and a member of the European Union and a member of the Hague Convention. But there was not a detailed presentation of the procedures used in the civil court in the civil law system, which are different than the American law system. Why isn't the availability of Hague Convention discovery sufficient for the case to be successfully tried in the United States without impairment to access to documents? There are numerous cases, Your Honor, discussing the unfairness to a party who is put in the position of having to present his witnesses solely by deposition testimony. No, I'm not talking about the witnesses. I'm talking about the documents now. I mean, part of the – we'll talk about the witnesses in a minute. But part of the district court decision was founded on the idea that it's going to be hard to get documents from the United States. And, of course, we have the remedies under the Hague Convention. Why are those insufficient? The standard that the court was considering was the relative ease of access to documents. If that were true, though, you would always have – if the Hague Convention issues trumped everything else, then the presence of foreign documents on foreign soil would always cause the case to be dismissed. I mean, you either have to say the Hague Convention works or it doesn't. Tell me why it doesn't work in this case. The Hague Convention works as the Hague Convention works, but in a context in which you are examining the relative ease of access to documents. In this case, the plaintiff testified that he had a cluster of documents that were the centerpiece of his case. They were in his possession. And they could be transported to Slovakia or to Canada or used here in the United States. The defendant, in contrast, has no documents. His work papers and all of the work product he generated, the billing records, the due diligence that was conducted throughout Eastern Europe for a long period of time and over hundreds of hours, are all located in Central Europe in various central – now, under the Hague Condition, he could go through that convention to try to bring all those  Now, in the context of access to documents, Mr. Wood, who has no documents here in the United States and doesn't live here, would be at a clear disadvantage to the plaintiff who, according to what was represented to Judge White, had the documents that he needed. Right. But is there some evidence in the record that the documents could not be obtained by him personally? In other words, he wants to produce the documents at all? Mr. Wood testified in his declaration that he personally owned none of the documents and had none of them in his possession. Right. He also testified that he no longer worked for the Deloitte entities. True. When we're discussing the work product of an accounting firm, an individual ex-partner does not have legal ownership, possession or control of that entity's documents. True. But if I go to my old law firm and say, I need a file, they give it to me. They might give it to you. They always give it to me. Mr. Wood was no longer working for that organization and had transferred to work for a different company in a different country. No, I understand that. He had no functional ability to command those documents. I think the question is, is there anything in the record that he says he cannot go and get the records? I do not believe he offered testimony about his ability to ask Deloitte to voluntarily provide them to him. No. What about an assessment of those records? Does the record show, does the record in this case show exactly which records he wants and what the nature of the records are so that a determination can be made as to whether they're really relevant? Yes. He testified in his declaration that the work product that was performed by, I believe he listed over a dozen different Deloitte employees working in several different Central European offices, were all located and owned by Deloitte, Slovakia. Further testimony was presented to judge, not further testimony, further argument, that the legal offices of Deloitte Central Europe might currently possess those documents. But in describing the nature and importance of the documents, Mr. Wood's position I haven't quite got the point yet. Does the record show he said there's document A entitled such and such a date which will demonstrate X? Or was it just my working papers are there? He did not describe the documents by title. And, Your Honor, frankly, there are thousands and thousands of documents that go into the compilation of work papers that support the valuation of a television picture. And how did the district court evaluate whether they're important at all for a trial on this case? That is an excellent question, Your Honor. One of the points of rebuttal we would want to make here is that the evaluation of the materiality and importance of evidence does not rest solely on the basis of what the plaintiff describes as his claim. We must also examine the importance to the defendants of the defendant's defense. Well, that's what we're trying to get at. He didn't say I need this document to do a defense. He made a generic claim, I need documents, right? I mean, I think that's what maybe Judge Walz is trying to get to as well as I am. And I'd like to address that, Your Honor. In the hearing which took place over the course of two hours, Judge White spent a lot of time on the question of the materiality of the work papers. There are pages and pages of questioning on that. And the reason they were material is because my client as an accounting professional conducted due diligence at great length and great expense on the nature of an investment opportunity, cable television systems. He contends, and his defense is, that he performed all of that work to the standards that were governing his work, which are international accounting standards, and that the valuation that was created as a result of all of those thousands of hours of work was a sound valuation given the understanding, assumptions, and work that was performed. The claim in the case is that it was a fraudulent valuation. Let's assume all you say is true, that he needs these papers to defend. And let's assume that the accounting firm is not as generous as my old law firm. They're not going to turn him over to him. What evidence do we have in the record that the courts overseas have the ability to compel the documents, compel production of the documents in a manner that is not a violation of the law? That is superior to the vehicles available under the Hague Convention? The primary evidence of that, Your Honor, is that the documents that Mr. Wood needs for his defense are the documents of Deloitte, Slovakia, indisputably headquartered in Bratislava, Slovakia. Right. In, I believe, the same city block that the court is located in, Bratislava, Slovakia. There was not an evidentiary presentation. In other words, my question is, what procedures are available under Slovakian law to compel the production of accounting documents from a third party? One question that's presented by this case is whether Deloitte, Slovakia would be a third party if this case were pursued in Bratislava, Slovakia, where we intend it should be pursued. Right, but they're not a third party now. But the second issue is that under a civil law system, the system, and I'm not an expert in the civil law system of Bratislava, Slovakia, but my understanding of the jurisdiction of any civil law court functioning as such is that it has jurisdiction over its own citizens. Right. But it's up to the magistrate, correct? In other words, it's not a system like the United States where you make a Rule 34 request for production, and that's either obeyed or not, and it's punishable by contempt. It's not party to party. It's initiated by the court, right? It's initiated by the court, but a party to a civil proceeding can request the court to obtain evidence necessary to his defense justice in the United States. Mr. Wood, in this case, would be asking for documents of his former employer, the Deloitte, Slovakia office, located quite in the center of the city, and of central materiality to the action and the claims of fraud against him, and the claims that the valuation was a fraud, as plaintiffs are alleging here. Your Honor, if I may, I'd like to address the twin question of the location of witnesses. The location of documents and the fact that documents can now be transported, often electronically, overseas and can be flown around in cargo jets has assumed diminished importance in modern international litigation. But the location of witnesses is a very different issue. Mr. Wood is not a resident of the United States. None of the witnesses he would call to testify in his defense in this action reside in the United States to his knowledge. Not one. He would not have a single witness to appear in the California court to attest to his character, to the competence of his accounting work, to the nature of the work he performed for this specific entity, and to the quite literally dozens of meetings that happened throughout the world in relation to Mr. Marshall's specific investment in these entities. He would be put in a position of presenting his case solely by virtue of deposition testimony. Well, not necessarily. I mean, you could firstly have video depositions, and also quite often in this district they have testimony live by satellite or video conference. What's wrong with that? The live deposition of European witnesses could not be compelled by the district court. The district court would have no authority to order a witness who resides in Bratislava, Slovakia, to appear and testify live by video conference or otherwise. At most, Mr. Wood would be in the position of having his attorneys, whether here in the United States or a duplicate set in Europe, go out to seek testimony preserving depositions from individuals who reside in Europe, and then presenting that taped or written testimony. And there are numerous cases, we've cited them in our papers, that talk about the disadvantage of a party who is left to present 100% of their testimony. Right. But these are your witnesses. These aren't adverse witnesses you're trying to compel. These are witnesses who want to come and testify about his good character, right? To say that witnesses would want to come or at least they'd be you're assuming they're uncooperative when you say the court cannot compel their attendance, right? Is there evidence in the record that they are? A court in Bratislava, Slovakia, could compel the attendance of a Bratislava, Slovakia resident. Mr. Wood cannot compel those individuals to travel 17 hours on an $8,000 plane flight to California to appear in a trial. So whatever measure of voluntary cooperation he might seek to obtain from the witnesses who are in Slovakia, in the Czech Republic, in Yugoslavia, and in Bulgaria, he would have to convince individual witnesses to travel 17 hours to California to appear in a trial. Well, sure, but if you have to compel a favorable witness to testify about character, that witness's testimony is unlikely to be helpful. Character is a minor issue. I mean, you mentioned character. Well, you mentioned it. I didn't. Right. Character is one issue because this case centers around allegations of fraud made against an accounting professional who has a significant interest in disputing and proving the falsity of those claims. But the centerpiece of the action from Mr. Wood's point of view, from the point of view of his defense, is to prove that the work performed by the Deloitte, Slovakia, and Deloitte, Bulgaria employees who performed the due diligence and did the accounting work was competent, adequate work, and that the information they received from various sources, including from the Canadian company itself, the Deloitte, Slovakia, and Deloitte, Bulgaria employees who performed the due diligence and did the accounting work, that defense will disprove a claim of fraud here. I'd also just like to point out one point. You are running out of your time, but if you want to make one quick point, you may. One quick point, Your Honors. We also presented the declaration testimony of George Manis. Mr. Manis is the other central participant, according to the plaintiffs, in this fraudulent enterprise. He testified that meetings with respect to convincing Mr. Marshall to invest in this venture occurred all over the world, listed them in detail, and said that none of the witnesses, not one, to any of those many meetings lived in the United States except for Mr. Manis himself. So the idea that there's only San Francisco meetings that are material to this case and that all of the witnesses reside here in California and can appear here in California simply isn't supported by the record. The meetings took place all over the globe. I know the time is run, but I wanted to ask one other question. Is there anything in the record where your client or either the defendants have listed the specific witnesses, and do we have declarations as to what they would say? We don't have declarations as to what the witnesses would say beyond the original declaration of my client listing 15 witnesses in Slovakia or in neighboring Czech Republic. And in that declaration, did he say what they would testify to? He discussed in a general way, in the nature of a Rule 26 disclosure, that they were familiar with the work performed for consolidated global with Mr. Marshall's specific business practices, which goes to the question of reliance in the case, an important element of a problem. Well, I understand you're going beyond the question I'm asking, and the question I'm asking is how specific is it in the record what they would say? I gather it's rather general. It was rather general originally, but was the subject of extensive further questioning by Judge White before rendering his decision. Let me ask one other question, and that is, Mr. Wood, you refer to him as not a resident of the United States. I take it he's still a citizen of the United States. He's a citizen of the United States, Your Honor. His family still lives here. He has a house in North Carolina or something. He does not have a house in North Carolina, and his family does not live here, Your Honor. His family are a Bratislava Slovakian citizen, two Bratislava Slovakian citizen children. I just read something in here that that's where I got it. I didn't make it out of thin air. I take it that what I read in the papers was wrong. At the time of the last hearing before Judge White, Mr. Wood's family was visiting grandparents in North Carolina. They live in Bratislava, Slovakia. His children live in Bratislava, Slovakia. He works in Albania. Thank you, Your Honor. Very good. A short rebuttal, please. In terms of the record on that last point, I don't believe that was an accurate statement. I think the record was absolutely clear that at the time of the hearing, his wife and children lived in North Carolina. Mr. Wood owned property in Florida. His wife and children lived in North Carolina, and he had a North Carolina driver's license, but that he submitted a declaration saying he intended that they would move to Bratislava in the future. So I can't tell you that we have any reason to suggest counsel's wrong when she says his wife and children no longer live in the U.S., but at the time of the hearing, it was conceded, or it certainly wasn't challenged, when we said they did. They lived there then, he was visiting there, then was the allegation, and he was found it convenient enough to maintain his property ownership. That was my recollection. Your Honors, if I could pick up on a couple of points. The statement about the documents, what they say and why they're important, you heard a cascade of generalities, and I believe that was one of our main points below, and it's one of our main points here. Generalities aren't good enough. The burden on the defendants is significant. It's a very strong showing by clear evidence that the defendant must make as to why you overcome the choice of forum and transfer outside the United States, putting aside the debate about how much deference to give this plaintiff's choice of this forum. Even Judge White concedes it never is zero. It's not possible to say, well, it doesn't count at all. Nevertheless, he didn't really count it. He says there's no factors that weigh against the four limited factors that he found weighed in favor of dismissal. Well, that's error right there, because now he's not doing what he said he had to do, which was give some deference to plaintiff's choice of forum. The cascade of generalities also swoop in a number of things that we're not arguing. The arguments below were his working relationship with Mr. Wood. The argument that somehow the details showing that we'd have to go into a negligence finding of failure to care implicates all the other people who know what a great job he was and what a great accountant he was and what a great team leader he was for all their other clients. We were never a client. We're not asserting a negligence claim against him. We're asserting fraud. We said he came here to the U.S. and said to Mr. Wood, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client, if you were a client. That's not what we're arguing here. We're saying, if you put your money in here, we're guaranteeing it and backing it up. As a matter of fact, we'll borrow the money, give you the money to loan. But isn't that the point? If you're allowed to only put on your case, then outside the broader context, you're depriving him of a defense. And if you can't produce the documents, can't produce the witnesses, then there is a real problem. Everybody keeps ignoring Mr. Maness. Mr. Maness was alleged to be at the meeting. Everybody keeps ignoring Mr. Zimmerman, when I say everybody, the defendant and the court below. The two witnesses, the only other two non-party witnesses to the allegations of fraud are going to be testifying live. No, I understand your theory, but their defense is somewhat different. Their defense is, look, I did due diligence. My papers show it. I was a good manager, good accountant, good analyst, ethical. And that evidence may be elsewhere. Well, start with their client, who's here in San Francisco. If they did the work, billed them for the work, had the full analysis and the detailed valuation, the client's going to have it. If not, certainly the client could be put aside the Hague Convention, and we're talking about Deloitte to Tumatsu and whether it will respond. The argument here that this was all found to be documents in Slovakia is not accurate. Judge White did not hold that. Judge White did not find that these other documents were available in Slovakia. The evidence below was that they were spread out. Deloitte Central Europe, which took over the management of Deloitte Slovakia, is not in Slovakia. And there is significant ambiguity as to whether any documents are in Slovakia. So the same Hague Convention is probably going to have to be relied on no matter where this case goes forward. Judge White did not balance. He just said, since I'm going to have to rely on it, it's a factor that weighs against it. That was error, because so will Slovakia. So it doesn't favor going to Slovakia. But more importantly, if in addition to the Hague Convention, here we will take discovery from Manis and his companies, and if they don't have all the records, including work papers, certainly we would ask, and presumably so would defendant, for an order for the court to instructing, as part of it being under its possession, custody and control, instructing the client to tell Deloitte to turn over its files so it could produce it in this litigation. And no one suggested they'd even ask Deloitte whether they would do that, and Deloitte would refuse. Instead, they said, let's go to Slovakia. Let me ask one question. I know your time is run. Counsel made a point that has bothered me, and that's our Hawaii case. How would, if you were writing this, how would you distinguish that case in order to come to the conclusion you wish to accept? The distinction that we draw between the case analyzing Hawaii, and I believe, I'll have it a moment. I know the case. The case specifically weighed and considered the fact that there was absolutely no contact with Hawaii whatsoever. The YAP defendants, for a YAP fishing venture, with California parties. The California parties chose to sue in Hawaii because they believed it was most convenient for everybody to meet there. Hawaii had no contacts whatsoever. It was conceded. So for the court to say in a situation where, yes, a U.S. resident chooses a, yes, U.S. forum, but one that has no contacts whatsoever, and imposes a burden on the defendant to try the case there, that should be given less deference. I do not have a case anywhere else in the country that suggests that's not an appropriate analysis of the Supreme Court decisions. Giving no deference whatsoever to a U.S. resident's choice of a U.S. forum where there is contact with Hawaii. The only case that does not have any contact with this forum, however, is what this district court did, and there is no case, including in the Ninth Circuit that they cited, that suggests that's appropriate. Thank you, counsel. The case just heard will be submitted. I want to thank you both for your arguments. It's a very interesting case, and of course, it's aptly presented before some students of international law. Very good. Very good arguments.
judges: Wallace, Thompson, Thomas